## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ASHER BRONSTIN**, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

**LENDING FORCE LLC**,

      Defendant.

Case No. 25-cv-13564-LJM-DRG

Hon. Laurie J. Michelson
Magistrate Judge David R. Grand

---

## DEFENDANT LENDING FORCE LLC'S
## MOTION TO STRIKE CLASS ALLEGATIONS

Defendant Lending Force LLC ("Lending Force"), pursuant to Fed. R. Civ. P. 12(f) and 23, respectfully moves this Court to strike Plaintiff Asher Bronstin's ("Plaintiff") class allegations within his Complaint. In support of this Motion, Lending Force respectfully refers the Court to the Brief In Support filed herewith.

Pursuant to E.D. Mich. LR 7.1, Lending Force conferred with Plaintiff in which Lending Force explained the nature of the motion or request and its legal basis but did not obtain concurrence in the relief sought.

WHEREFORE, Lending Force respectfully requests that, pursuant to Fed. R. Civ. P. 12(f) and 23, the Court enter an order striking Plaintiff's class allegations from the Complaint.

Respectfully submitted,

TROUTMAN AMIN, LLP

By: */s/ Brittany A. Andres*
Eric J. Troutman
Brittany A. Andres
400 Spectrum Center Drive
Suite 1550
Irvine, CA 92618
troutman@troutmanamin.com
brittany@troutmanamin.com
Tel: (949) 350-5612
*Attorneys for Defendant Lending Force LLC*

WILLIAMS, WILLIAMS, RATTNER
& PLUNKETT, P.C.
Alexander A. Ayar (P69623)
Michael J. Petrus (P84605)
380 N. Old Woodward, Ste 300
Birmingham, MI 48009
(248) 642-0333
aayar@wwrplaw.com
mpetrus@wwrplaw.com
*Attorneys for Defendant Lending Force LLC*

Dated: January 16, 2026

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ASHER BRONSTIN**, individually and on
behalf of all others similarly situated,

        Plaintiff,               Case No. 25-cv-13564-LJM-DRG

v.

                                  Hon. Laurie J. Michelson

**LENDING FORCE LLC**,         Magistrate Judge David R. Grand

        Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT LENDING FORCE LLC'S**
<u>**MOTION TO STRIKE CLASS ALLEGATIONS**</u>

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. vi

TABLE OF AUTHORITIES ................................................................................ vii

I.        INTRODUCTION.....................................................................................1

II.       PLAINTIFF'S ALLEGATIONS ..............................................................2

III.      ANALYSIS ...............................................................................................3

   A.  Legal Standards..............................................................................................3

   B.  Plaintiff's National DNC Class is Uncertifiable Because it is Overly Broad, Lacks Commonality and Defined Based Upon the Merits of Class Members Claims. ...........................................................................................................5

      1.  Plaintiff's National DNC Class is Overly Broad. ................................5

         i.  Plaintiff's National DNC Class is Overly Broad Because It Includes Individuals Who Are Not Residential Telephone Subscribers. .......7

         ii. Plaintiff's National DNC Class is Overly Broad Because It Includes Individuals Who Did Not Personally Register Their Telephone Number On the National DNC Registry. .........................................8

         iii. Plaintiff's National DNC Class is Overly Broad Because It Includes Individuals Who Consented or Have an EBR With Lending Force. ......................................................................................................10

      2.  The Over Breadth of the Class Also Results in the Class Facially Lacking Commonality in a Way That Discovery Cannot Resolve.....13

      3.  Plaintiff's National DNC Class is Defined Based Upon the Merits Instead of Objective Criteria. ............................................................14

   C.  Plaintiff's Caller ID Class is Overly Broad, Lacks Commonality, is Vague, and Defined Based Upon the Merits of Class Members Claims. ......................................................................................................17

1. Plaintiff's Caller ID Class is Overly Broad Because it Includes Individuals who are Not Residential Telephone Subscribers. ............17

2. The Over Breadth of the Class Also Results in the Class Facially Lacking Commonality in a Way that Discovery Cannot Resolve. .....17

3. Plaintiff's Caller ID Class is Vague and Ambiguous as to the Phrase "third party acting on behalf of Defendant.".......................................18

4. Plaintiff's Caller ID Class is Defined Based Upon the Merits Instead of Objective Criteria. .................................................................19

D. Plaintiff's Internal DNC Class is Overly Broad, Lacks Commonality, is Vague and Defined Based Upon the Merits of Class Members Claims.19

1. Plaintiff's Internal DNC Class is Overly Broad..................................19

   i. Plaintiff's Internal DNC Class is Overly Broad Because it is Not Limited to Residential Telephone Subscribers. .............................20

   ii. Plaintiff's Internal DNC Class is Overly Broad Because it Does Not Account for Individuals who Reconsented After Previously Asking the Calls to Stop. ...........................................................20

   iii. Plaintiff's Internal DNC Class is Overly Broad Because it Includes Individuals who were Only Texted within 10 Business Days After Requesting the Messages to Stop...................................................21

2. The Over Breadth of the Class Also Results in the Class Facially Lacking Commonality in a Way that Discovery Cannot Resolve. .....22

3. Plaintiff's Internal DNC Class is Vague and Ambiguous as to the Phrase "third party acting on behalf of Defendant.".........................23

4. Plaintiff's Internal DNC Class is Defined Based Upon the Merits Instead of Objective Criteria. .........................................................23

E. The Court Should Not Wait Until The Certification Stage To Address These Issues But Should Strike Them Here And Now...........................24

IV. CONCLUSION ....................................................................................25

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether Plaintiff's proposed class definitions should be stricken under Federal Rules of Civil Procedure 12(f) and 23 where each class is facially overbroad because it includes large numbers of individuals who lack viable TCPA claims, including non-residential subscribers, individuals who consented or had an established business relationship, individuals who reconsented, and individuals contacted within the regulatory safe-harbor period.

Defendant answers "Yes."

Plaintiff answers "No."

2.      Whether Plaintiff's proposed class definitions should be stricken where their overbreadth and inclusion of individuals without viable claims necessarily defeat Fed. R. Civ. P. 23(a)(2) commonality, because liability cannot be resolved through common proof and would require individualized determinations that discovery cannot cure.

Defendant answers "Yes."

Plaintiff answers "No."

3.      Whether Plaintiff's class allegations should be stricken where the proposed classes are impermissibly vague and administratively infeasible due to undefined references to "third parties acting on behalf of Defendant," making it impossible to determine class membership using objective criteria.

Defendant answers "Yes."

Plaintiff answers "No."

4.      Whether Plaintiff's class allegations should be stricken where class membership turns on merits-based determinations—such as whether a call or text constituted "telemarketing"—rather than objective, ascertainable criteria, rendering the classes facially uncertifiable under Fed. R. Civ. P. 23.

Defendant answers "Yes."

Plaintiff answers "No."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 12(f)

Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(c)(1)(A)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)

*Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532 (6th Cir. 2012)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838 (6th

Cir. 2013)

*Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021)

*Jimenez v. Allstate Indem. Co.,* No. 07-14494, 2010 WL 3623176 (E.D. Mich. Sept.

15, 2010)

*Delgado v. eMortgage Funding, LLC*, No. 21-11401, 2021 WL 4776774 (E.D. Mich.

Oct. 13, 2021)

# TABLE OF AUTHORITIES

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc*., No. 16 C 2513, 2018 WL 488257 (N.D. Ill. Jan. 18, 2018)........................................................................6

*Alhassid v. Bank of Am., N.A.,* 307 F.R.D. 684 (S.D. Fla. 2015) ..................... 19, 23

*Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538 (1974) ..............................15

*Balthazor v. Cent. Credit Servs., Inc*., No. 10-62435 CIV, 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) ..............................................................................................12

*Barnes v. Allsup Employment Services, LLC*, No. 21-CV-21121, 2022 WL 2390715 (S.D. Fla. July 1, 2022)..........................................................................................16

*Barr v. Macys.com, LLC*, No. 1:22-CV-07867 (ALC), 2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023)......................................................................................................22

*Brashear v. Perry Cnty., Ky*., No. CIV.A. 6:06-143-DCR, 2007 WL 1434876 (E.D. Ky. May 14, 2007).................................................................................................5

*Brown v. Nano Hrg. Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536 (S.D. Cal. July 9, 2024) .......................................................... 10, 11, 12

*Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287 (W.D. Ky. 2008).... 14, 15

*Delgado v. eMortgage Funding, LLC*, No. 21-CV-11401, 2021 WL 4776774 (E.D. Mich. Oct. 13, 2021).................................................................................................21

*Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)................................................................................4, 5

*Eversole v. EMC Mortgage Corp.*, No. 05–124–KSF, 2007 WL 1558512 (E.D. Ky. May 29, 2007)................................................................................15

*Fantasy, Inc. v. Fogerty,* 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994).......................................................4

*Hansen v. United Airlines, Inc*., No. 20 CV 2142, 2021 WL 4552552 (N.D. Ill. Oct. 5, 2021) ................................................................................13

*Hicks v. Client Servs., Inc*., No. 07-61822-CIV, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008)................................................................................11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)................................................................................13

*Jamison v. First Credit Servs., Inc*., No. 12 C 4415, 2013 WL 3872171 (N.D. Ill. July 29, 2013) ................................................................................11

*Jimenez v. Allstate Indem. Co*., No. 07-cv-14494, 2010 WL 3623176 (E.D. Mich. Sept. 15, 2010)................................................................................4, 5

*John v. Nat'l Sec. Fire & Cas. Co*., 501 F.3d 443 (5th Cir. 2007)........................24

*Keith Barnes, Plaintiff, v. The Coca-Cola Co., Defendant*., No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431 (E.D. Cal. Apr. 7, 2025)........................ 6, 10, 11

*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185 (D. Colo. Nov. 14, 2023) ............................................................................9

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672 (7th Cir. 2009) ...................................................................................... 5, 6, 7

*Lindsay Transmission, LLC v. Off. Depot, Inc*., No. 4:12-CV-221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ........................................................12

*Loreto v. Procter & Gamble Co.,* No. 1:09-CV-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ............................................................................6

*Lucoff v. Navient Sols., LLC*, 981 F.3d 1299 (11th Cir. 2020) ................................21

*Lyngaas v. Curaden Ag*, 992 F.3d 412 (6th Cir. 2021) ...........................................18

*Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34 (1st Cir. 2013)............................3

*Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802 (7th Cir. 2012).................7

*Oshana v. Coca-Cola Co*., 472 F.3d 506 (7th Cir. 2006)........................................7

*Palmer v. Stassinos*, 236 F.R.D. 460 (N.D. Cal. 2006) ..........................................19

*Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224 (N.D. Cal. 2024)......................8, 17

*Perrong*, 519 F. Supp. 3d 193 (E.D. Pa. 2021)........................................................17

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .............4, 24

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ................................................9

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, (S.D. Ohio May 7, 2014)....................................................................................................21

*Schilling v. Kenton Cty., Ky.*, No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011) ...............................................................................................................4, 5

*Schumacher v. State Auto. Mut. Ins. Co.*, No. 1:13-CV-00232, 2015 WL 421688 (S.D. Ohio Feb. 2, 2015) ...................................................................................18

*Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017) ............................................................................22

*Stevens- Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648 (W.D. Tenn. 2020)8,   17, 20

*Taylor v. Universal Auto Group I, Inc.,* No. 3:13-cv-05245-KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014)....................................................................................16

*Thomas v. Moore USA, Inc.*, 194 F.R.D. 595 (S.D. Ohio 1999) ..............................5

*Thompson v. Vintage Stock, Inc.,* No. 4:23-CV-00042-SRC, 2024 WL 492052 (E.D. Mo. Feb. 8, 2024) ....................................................................................................16

*Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06–cv–00018, 2006 WL 3359482 (N.D. Ohio Nov. 17, 2006)........................................................................................5

*Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857 (11th Cir. 2012).....................6

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................... passim

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012)................... 14, 18

**Statutes**

47 U.S.C. § 227 ...................................................................................7

**Rules**

Fed. R. Civ. P. 12(f) ..........................................................................3

Fed. R. Civ. P. 23(a)(2) ....................................................................13

Fed. R. Civ. P. 23(c)(1)(A) ...............................................................24

**Regulations**

47 C.F.R. § 64.1200(a)(1) .................................................................20

47 C.F.R. § 64.1200(c)(ii).......................................................... 7, 8, 17

47 C.F.R. § 64.1200(d)(3)..................................................................22

## I.   <u>INTRODUCTION</u>

Plaintiff Asher Bronstin ("Plaintiff") asserts three class definitions in his Complaint. Yet, all three classes are fatally flawed, and in a manner that discovery cannot repair.

Plaintiff's National ("DNC") class is overbroad and lacks commonality because it sweeps in individuals who are not residential subscribers, did not personally register their numbers on the DNC Registry, or consented to contact or maintained an established business relationship ("EBR") with Lending Force. The class is also defined based upon the merits instead of objective criteria because it only includes individuals who received "telemarketing" messages.

Plaintiff's Telemarketing Caller ID class ("Caller ID") suffers from the same fatal flaws. It is overbroad and lacks commonality by including non-residential subscribers, defined based upon the merits instead of objective criteria as it only includes individuals who received "telemarketing" messages, and is further rendered uncertifiable by the vague phrase "third party acting on behalf of Defendant."

Plaintiff's Internal DNC class is likewise uncertifiable. It is overinclusive because it encompasses non-residential subscribers, individuals who reconsented after opting out, and those contacted only within the 10-day safe-harbor period. Like the Caller ID class, it is also vague as to "third party acting on behalf of

1

Defendant" and improperly defined by the alleged receipt of "telemarketing" messages.

Because all three proposed classes are facially defective and incapable of certification under Rule 23, they should be stricken here and now.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges in approximately early February 2024 he began receiving text messages from Lending Force without his consent and while his phone number was on the National DNC registry. (ECF No. 1, PageID. 4, ¶ 23). Plaintiff alleges he purportedly asked for the messages to stop, but he continued to receive messages. (PageID. 6, ¶ 29). Further, Plaintiff alleges that he received the messages without the transmission of caller identification information that included either CPN or ANI and Lending Force's name or transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours. (PageID. 4-5, ¶ 24-26). Based on these alleged violations, Plaintiff seeks to represent three nationwide classes:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Lending Force's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant)

2

sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) (a) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name or (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Internal DNC Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

(PageID. 8, ¶ 44).

## III.   <u>ANALYSIS</u>

### A.   **Legal Standard**

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34, 59 (1st Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Id*.

A "Rule 12(f) [motion] is the procedural vehicle for striking class

3

allegations." *Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205, at *7–8 (W.D. Ky. Sept. 29, 2017). Although disfavored when used for the purposes of delay, "[t]he essential function of a Rule 12(f) motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994). A motion to strike is particularly proper when "allegations create[ ] serious risks of prejudice to [the defendant], delay, and confusion of the issues." *Id*. at 1528.

"A defendant may move to strike class allegations even before a plaintiff has filed a motion for class certification." *Eldridge*, 2017 WL 4364205, at *7-8 (citing 1 McLaughlin on Class Actions § 3:4 (10th ed. 2013)); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting that a motion to strike may come before a motion to certify and that "either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)" (alteration removed)).

Courts within the Sixth Circuit have held that "the standard of review [on a motion to strike class allegations] is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6)." *Schilling v. Kenton Cty., Ky*., No. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011) (citing *Jimenez v. Allstate Indem. Co*., No. 07-cv-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010)). "The

4

moving party has the burden of demonstrating from the face of the [plaintiff's] complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiff[ ] may be able to prove." *Id*. (citing *Jimenez*, 2010 WL 3623176, at *3). Thus, even when the class-action issue is before a court in the context of a motion to strike, the central question is whether the Rule 23 prerequisites are met. *Id*. (citing *Thomas v. Moore USA, Inc*., 194 F.R.D. 595, 597 (S.D. Ohio 1999)). Therefore, "if the plaintiff will be unable to establish even one of the Rule 23 prerequisites, the class allegations must be stricken." *Eldridge*, 2017 WL 4364205, at *7–8 *see also Thornton v. State Farm Mut. Auto Ins. Co*., No. 1:06–cv–00018, 2006 WL 3359482, at *4–5, (N.D. Ohio Nov. 17, 2006) (striking class allegations because claims would require individualized inquiry).

### B.   Plaintiff's National DNC Class is Uncertifiable Because it is Overly Broad, Lacks Commonality and Defined Based Upon the Merits of Class Members Claims.

#### 1.   Plaintiff's National DNC Class is Overly Broad.

A proposed class definition may be overly broad if "it would include members who have not suffered harm at the hands of the Defendant and are not at risk to suffer such harm." *Brashear v. Perry Cnty., Ky*., No. CIV.A. 6:06-143-DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007). Accordingly, a class definition that encompasses a substantial number of members without viable claims is not certifiable. *See Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672,

678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc*., 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"). This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc*., No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018).

And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *See Barnes v. The Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at *4 (E.D. Cal. Apr. 7, 2025) (granting motion to strike class action allegations in the complaint and finding that the court need not allow facially overbroad claims to proceed beyond the pleadings stage); *Loreto v. Procter & Gamble Co.,* No. 1:09-CV-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013) (granting motion to strike class allegations finding the class overbroad where the class contained many injured class members). Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 677-78. As the Seventh Circuit has aptly observed:

> Even if a class's claim is weak, the sheer number of class members and the potential payout that could be required if all members prove liability might force a defendant to settle a meritless claim in order to avoid breaking the company. While that prospect is often feared with large

classes, **the effect can be magnified unfairly if it results from a class defined so broadly as to include many members who could not bring a valid claim even under the best of circumstances.**

*Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 825 (7th Cir. 2012) (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)) (emphasis added). This is particularly true in Telephone Consumer Protection Act ("TCPA") actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(c)(3); *see also Kohen*, 571 F.3d at 678 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.").

Here, Plaintiff's National DNC class is overbroad because it includes: i) individuals who are not residential telephone subscribers; ii) individuals who did not personally register their telephone number on the National DNC Registry; and iii) individuals who consented or have an EBR with Lending Force.

> **i.   Plaintiff's National DNC Class is Overly Broad Because It Includes Individuals Who Are Not Residential Telephone Subscribers.**

Section 64.1200(c) provides, in relevant part, "[n]o person or entity shall initiate any telephone solicitation to…[a] *residential* telephone subscriber who has registered his or her telephone number on the national do-not-call registry..." 47 C.F.R. § 64.1200(c)(ii) (emphasis added). Hence the residential usage of the

7

telephone number called is a critical element of Plaintiff's claims. *See Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 655 (W.D. Tenn. 2020) ("To succeed on a claim alleging violations of the relevant regulations, a plaintiff must [allege] ... that she was a 'residential telephone subscriber'").

Here, Plaintiff's National DNC class is over-inclusive in that it includes individuals who have no valid claim because the text message may have been to a business telephone subscriber or non-residential cellular phone number. By the statute's clear language, the call or text must have been made to a residential telephone subscriber. *See* 47 C.F.R. § 64.1200(c)(ii). Because Plaintiff's class definition is not limited to residential telephone subscribers, the class is overly broad and must be stricken. *See Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224, 228 (N.D. Cal. 2024) (granting the defendant's motion to deny class certification finding that determining which numbers in the class were business numbers versus residential numbers would require individualized proof).

> **ii.   Plaintiff's National DNC Class is Overly Broad Because It Includes Individuals Who Did Not Personally Register Their Telephone Number On the National DNC Registry.**

47 C.F.R. § 64.1200(c), provides, in relevant part "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber ***who has registered his or her telephone number on the national do-not-call registry***..." 47 C.F.R. § 64.1200(c)(ii) (emphasis added). The plain language of Section 64.1200(c)

indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has registered his or her telephone number on the national DNC Registry.

Here, Plaintiff's National DNC class is overly broad because it is not limited to individuals who *personally* placed their number on the DNC Registry. The class, as defined, includes all persons in the United States whose "telephone numbers were on the National Do Not Call Registry for at least 31 days…" (PageID. 8, ¶ 44). This definition encompasses all individuals whose number is registered on the DNC Registry, regardless of whether he or she personally registered it. However, those individuals who did not personally register their telephone number on the DNC Registry, lack a valid claim. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *5 (N.D. Iowa June 9, 2022) (dismissing case with prejudice where the plaintiff failed to allege that she registered her telephone on the DNC registry).

Allowing this action to proceed with the proposed class definition as is, would therefore work an inherent unfairness against Lending Force, because it would be required to undertake the burden and expense of defending against a putative class that contain members with no standing and no conceivable claim. *See Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023) (modifying the class to state "the person's telephone

9

number was registered by the person...").

### iii.   Plaintiff's National DNC Class is Overly Broad Because It Includes Individuals Who Consented or Have an EBR With Lending Force.

While the TCPA prohibits "telephone solicitations" to a "subscriber who has registered his or her number on the national do-not-call registry," no person or entity may be held liable for calling individuals that have given their "prior express invitation or permission" or with whom they have an "established business relationship." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2), (f)(15). Thus, absence of consent or an EBR is an affirmative allegation that must be included in a complaint to state a claim for violation of the TCPA's DNC rules.

*Barnes* is instructive. There, the plaintiff sought to represent a nationwide class of everyone who had "received a telephone call … made by or on behalf of" the defendant. 2025 WL 1027431, at *4. The court found the class's breadth was "implausible", because the class was not limited to calls that were made without consent, a characteristic "*core* to calls that violate the TCPA". *Id*. at *5 (emphasis added).

Similarly, in *Brown v. Nano Hrg. Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536 (S.D. Cal. July 9, 2024), the court granted the defendant's motion to strike class allegations finding that class definition was overly broad. More specifically, the court stated:

> "*[T]he class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from Nano.* The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Brown's class definition necessarily includes any individuals who have consented to calls from Nano. [] Like in *Sanders*, these individuals would also lack standing. 672 F. Supp. 2d at 991.

*Brown*, 2024 WL 3367536 at *8 (emphasis added).

Here, Plaintiff's National DNC class is problematic because it is overly broad in its failure to exclude calls lawfully made under the TCPA. Plaintiff's over-inclusive definition necessarily includes individuals who have no viable claim against Lending Force (and who lack standing to sue under the TCPA), as it includes individuals who either consented to be contacted by Lending Force or had an EBR with Lending Force. As calls made with the requisite consent are not actionable under the TCPA, the class therefore includes a great number of individuals who were not and could not have been harmed by Lending Force. *See Brown*, 2024 WL 3367536 at *8; *Barnes*, 2025 WL 1027431, at *5.

Consistent with this framework, courts have properly rejected class definitions as impermissibly overbroad where the "proposed class could potentially include thousands of individuals who consented to receiving calls on their cellphones…" *Jamison v. First Credit Servs., Inc*., No. 12 C 4415, 2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013); *see Hicks v. Client Servs., Inc*., No. 07-61822-CIV, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (denying class

11

certification of the TCPA claim because the Court found "consent is an issue that would have to be determined on an individual basis at trial); *Balthazor v. Cent. Credit Servs., Inc*., No. 10-62435 CIV, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (same). This is because, under the TCPA, a call or message made with prior express consent is lawful—i.e., a plaintiff suffers no harm—and the absence of consent is fatal to an individual's TCPA claim.

Moreover, Plaintiff's National DNC class would include members who lack valid claims because they have an EBR with Lending Force by completing a transaction within 18 months of receiving a call or text message. Plaintiff's class definition entirely fails to exclude or carve out individuals who had an EBR with Lending Force, and thus these individuals are unavoidably included in the class definition. (PageID. 8, ¶ 44). Moreover, there are no allegations from which the Court could plausibly discern a class which exclude such individuals. For example, nothing in the class definition or class allegations provides a mechanism to identify individuals who consented to messages or who made a purchase with Lending Force in the past 18 months so as to properly exclude them from the putative class. Thus, the class is overbroad, and should be stricken. *See Brown*, 2024 WL 3367536 at *8; *Barnes*, 2025 WL 1027431, at *5; *Lindsay Transmission, LLC v. Off. Depot, Inc*., No. 4:12-CV-221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) (granting a motion to strike class allegations and determining that a "class membership will

require the kind of individualized determinations—the absence of prior consent and the absence of a prior business relationship—precluded by Rule 23.").

### 2. The Over Breadth of the Class Also Results in the Class Facially Lacking Commonality in a Way That Discovery Cannot Resolve.

In analyzing the merits of a putative class, closely related to, but analytically distinct from the over-breadth inquiry, is the commonality analysis.

Rule 23(a)(2) mandates that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires more, however, than merely raising common questions "but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation" is required. *Dukes*, 564 U.S. at 350. If "the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and commonality is absent. *Hansen v. United Airlines, Inc*., No. 20 CV 2142, 2021 WL 4552552, at *5 (N.D. Ill. Oct. 5, 2021). Stated differently, the putative class's "claims must depend upon a common contention … that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (citing *Dukes*, 564 U.S. at 350.).

Here, because the class definition fails to account for class members that lack valid claims (i.e., because class members consented or because they have an EBR

with Lending Force, are not residential telephone subscribers or did not personally register their phone number on the DNC Registry), there is no conceivable method to prove the validity of all class members' claims "in one stroke." *Dukes*, 564 U.S. at 350. Some class members will lack a valid claim because they didn't personally list their phone number on the national DNC Registry, and it would be impossible to determine through common evidence who has a valid claim amongst the entire class.

The class does not account for this issue at all. Thus, the available defenses facially and necessarily thwart class-wide "answers" on the critical issue of liability. Stated simply—there is no pertinent commonality amongst class members which would hold the class together. The class, therefore, lacks commonality and must be stricken. *Dukes*, 564 U.S. at 350.

### 3. Plaintiff's National DNC Class is Defined Based Upon the Merits Instead of Objective Criteria.

A class must be defined based upon clear and objective criteria. *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537-538 (6th Cir. 2012)) ("[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."). A class defined based upon the merits of a claim is simply not certifiable. *See Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 294 (W.D. Ky. 2008) ("a class definition 'should avoid ... terms that depend on resolution of the merits.'")

14

(citing *Manual for Complex Litigation* (Fourth) § 21.222 (2004)); *see also, e.g.,*
*Eversole v. EMC Mortgage Corp.*, No. 05–124–KSF, 2007 WL 1558512 *5 (E.D.
Ky. May 29, 2007) (finding "unworkable" a class definition where "[o]nly after
completing individual decisions on the merits could any class be identified"). This
is so because merits determinations must not be made at the certification stage—
yet a class defined based upon the merits of a claim assures that all members of a
class have already won on a critical substantive issue. *Burkhead*, 250 F.R.D. at 293-
294. And that, in turns, creates problems of fairness for defendants and violates the
protections of the one-way intervention rule.[1]

Here, Plaintiff's National DNC class violates all of these rules and raises all
attendant concerns. The class turns on whether a consumer received *telemarketing*
call or text message from Lending Force. (PageID. 8, ¶ 44). Yet, to determine who
is in the class here, the Court would need to review each call recording and/or text
message sent to each class member to determine whether the message was
"telemarketing". This is obviously problematic from a predominance perspective,
but this is also plainly a merits determination. That is, at the class certification stage,
this Court will need to decide whether or not a class member received a

---

[1] "One-way intervention occurs when the potential members of a class action are
allowed to await ... final judgment on the merits in order to determine whether
participation [in the class] would be favorable to their interests." *Am. Pipe & Constr.
Co. v. State of Utah*, 414 U.S. 538, 547 (1974) (internal quotation marks omitted).

telemarketing message. And that is per se improper. *See Barnes v. Allsup Employment Services, LLC*, No. 21-CV-21121, 2022 WL 2390715, at *5 (S.D. Fla. July 1, 2022) (striking plaintiff's class where an individualized inquiry would need to be undertaken in determining which potential class members received more than one phone call, and in turn whether the respective calls each received was subject to liability).

Because membership in the class is determined by whether the consumer received a telemarketing call or text message, Lending Force would be unfairly prejudiced by a proceeding where a crucial merits inquiry has already been determined in the class members' favor—individuals are either already determined to have won on this critical issue, or they are not members of the class at all. *See Thompson v. Vintage Stock, Inc.,* No. 4:23-CV-00042-SRC, 2024 WL 492052, at *10 (E.D. Mo. Feb. 8, 2024) (striking the class definition in count three because in order to certify this class, the court would have to determine whether a text message is a "telephone solicitation").

As Plaintiff's National DNC class could never be certified, this Court should strike the class. *See Thompson*, 2024 WL 492052, at *10; *see e.g., Taylor v. Universal Auto Group I, Inc.,* No. 3:13-cv-05245-KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) (finding that the "inclusion of the 'without prior consent' language in the national classes definition makes it a [improper] class, as

clearly the issue of consent is central to determining defendant's liability").

### C.    Plaintiff's Caller ID Class is Overly Broad, Lacks Commonality, is Vague, and Defined Based Upon the Merits of Class Members Claims.

#### 1.    Plaintiff's Caller ID Class is Overly Broad Because it Includes Individuals who are Not Residential Telephone Subscribers.

Section 64.1200(c) prohibits telephone solicitations to *residential subscribers*. 47 C.F.R. § 64.1200(c)(ii). Accordingly, residential use of the called number is an essential element of Plaintiff's claims. *See Stevens-Bratton,* 437 F. Supp. 3d at 655; *see also Perrong*, 519 F. Supp. 3d 193, 197 (E.D. Pa. 2021).

Here, Plaintiff's Caller ID class is overbroad because it includes individuals whose calls or texts were to business or other non-residential numbers. By the statute's plain terms, only calls to residential subscribers are actionable. 47 C.F.R. § 64.1200(c)(ii). Because the class is not limited, it must be stricken.

#### 2.    The Over Breadth of the Class Also Results in the Class Facially Lacking Commonality in a Way that Discovery Cannot Resolve.

Because the Caller ID class definition fails to account for class members that lack valid claims (i.e., class members that are not residential telephone subscribers), there is no conceivable method to prove the validity of all class members' claims "in one stroke." *Dukes*, 564 U.S. at 350. Some class members will lack a valid claim because they are not residential telephone subscribers, and it would be impossible to determine through common evidence who has a valid claim amongst the entire class. *See Payne,* 347 F.R.D. at 228.

17

### 3. Plaintiff's Caller ID Class is Vague and Ambiguous as to the Phrase "third party acting on behalf of Defendant."

"[A]lthough not explicitly stated in Rule 23 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Lyngaas v. Curaden Ag*, 992 F.3d 412, 428 (6th Cir. 2021) (quoting *Young,* 693 F.3d at 537-38). In other words, a class cannot be certified where its scope is too indefinite or vague. *See Schumacher v. State Auto. Mut. Ins. Co.*, No. 1:13-CV-00232, 2015 WL 421688, at *3 (S.D. Ohio Feb. 2, 2015) ("Before analyzing the requirements of Rule 23(a), a court should first consider whether a precisely-defined class exists"); *Parsittie v. Schneider Logistics, Inc.*, No. CV193981MWFAFMX, 2019 WL 8163645, at *4 (C.D. Cal. Oct. 29, 2019) (granting the plaintiff's motion to dismiss or otherwise strike the complaint where the class definition was vague and significantly overbroad).

Here, Plaintiff's proposed Caller ID class is inadequately defined because it hinges on the vague and ambiguous phrase "third party acting on behalf of Defendant." (PageID. 8, ¶ 44). Plaintiff provides no parameters identifying which third parties would qualify as a third party acting on Lending Force's behalf, leaving the scope of the class unclear. *See Parsittie*, 2019 WL 8163645, at *4 (striking class definition including undefined "third parties" as vague and overbroad). This lack of clarity "makes it impossible to ascertain the individuals who fit within the

18

proposed class definition." *Parsittie*, 2019 WL 8163645, at *4.

Moreover, the lack of clarity may lead to the parties litigating regarding whether certain calls fall under this definition. *See Palmer v. Stassinos*, 236 F.R.D. 460, 463 (N.D. Cal. 2006) (denying motion for class certification where "the parties would be likely to spend much time litigating whether certain letters fall within this proposed definition."). As such, Plaintiff's Telemarketing Caller ID class definition must be stricken.

### 4. Plaintiff's Caller ID Class is Defined Based Upon the Merits Instead of Objective Criteria.

For the same reasons as Section III(B)(3) above, the Caller ID class is uncertifiable because it is also pleaded on a merits based inquiry and not objective criteria. The class turns on whether a consumer received two or more *telemarketing* calls or text messages. (PageID. 8, ¶ 44). Because the class definition "employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability" the class can never be certified. *Alhassid v. Bank of Am., N.A.,* 307 F.R.D. 684, 693 (S.D. Fla. 2015).

### D. Plaintiff's Internal DNC Class is Overly Broad, Lacks Commonality, is Vague and Defined Based Upon the Merits of Class Members Claims.

### 1. Plaintiff's Internal DNC Class is Overly Broad.

Plaintiff's Internal DNC class is overbroad because it includes individuals: i) who are not residential telephone subscribers; ii) who reconsented after

previously asking for the calls to stop; and iii) who were only texted withing 10 days after requesting the messages to stop.

### i.   Plaintiff's Internal DNC Class is Overly Broad Because it is Not Limited to Residential Telephone Subscribers.

For the same reasons as Sections III(B)(1)(i) and III(C)(1) above, the Internal DNC class is uncertifiable because it is not limited to residential telephone subscribers. The class turns on whether a consumer received two or more telemarketing calls or text messages, regardless of what type of phone such call or message was received on. (PageID. 8, ¶ 44). Because the Internal DNC class is not limited to residential telephone subscribers—an element required to state a claim under the TCPA—the Internal DNC class cannot be certified as currently defined. *See Stevens- Bratton*, 437 F. Supp. 3d at 655.

### ii.   Plaintiff's Internal DNC Class is Overly Broad Because it Does Not Account for Individuals who Reconsented After Previously Asking the Calls to Stop.

Under the TCPA and its implementing regulations, a consumer who has previously provided consent may revoke that consent "by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(1). Once a valid revocation is received, the caller or sender must honor that request "within a reasonable time not to exceed ten business days." *Id*.

Critically, however, revocation is not permanent. Courts have recognized

20

that a consumer who has revoked consent may later re-consent to receive communications. *Lucoff v. Navient Sols., LLC*, 981 F.3d 1299, 1306 (11th Cir. 2020). Where a consumer subsequently reconsents, telemarketing communications made after that reconsent do not violate the TCPA or its internal DNC provisions. *See Lucoff*, 981 F.3d at 1306 (granting the defendant's summary judgment motion due to the plaintiff reconsenting to receive calls).

Here, Plaintiff's Internal DNC class is overly broad because it fails to account for these individuals who reconsented to receive calls after initially revoking consent. Those individuals, by definition, have no viable TCPA claim arising from communications sent after reconsent. By failing to exclude such individuals, Plaintiff's Internal DNC class definition impermissibly includes members who suffered no statutory injury and have no valid grievance against Lending Force. *See Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, (S.D. Ohio May 7, 2014). For this reason, the Internal DNC class must be stricken.

### iii. Plaintiff's Internal DNC Class is Overly Broad Because it Includes Individuals who were Only Texted within 10 Business Days After Requesting the Messages to Stop.

"The FCC regulations that govern the TCPA also include certain safe harbor provisions that allow a defendant to avoid liability under § 227(c)." *Delgado v. eMortgage Funding, LLC*, No. 21-CV-11401, 2021 WL 4776774, at *4 (E.D. Mich. Oct. 13, 2021). Section 64.1200(d)(3) provides that an entity making calls to a

21

residential phone for telemarketing purposes "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request." 47 C.F.R. § 64.1200(d)(3) (emphasis added). This is also known as the 10-day safe harbor.

Here, Plaintiff's Internal DNC class is overly broad because it includes individuals who have no valid claim because they were contacted within the safe harbor period. The mere fact that an individual receives a call after a do not call request is placed is not sufficient. *See Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017) ("The mere fact that he received a call after his January 9 request [to be placed on the DNC list] is not a subsection (d)(3) violation."); *see also Barr v. Macys.com, LLC*, No. 1:22-CV-07867 (ALC), 2023 WL 6393480, at *6 (S.D.N.Y. Sept. 29, 2023) (dismissing the plaintiff's subsection (d)(3) claim where the defendant contacted the plaintiff three days after his request to not be contacted). Because Plaintiff's class definition is not limited to individuals who were contacted after the safe harbor period, the class is overly broad and must be stricken.

### 2.    The Over Breadth of the Class Also Results in the Class Facially Lacking Commonality in a Way that Discovery Cannot Resolve.

For the same reasons as Sections III(B)(2) and III(C)(2) above, the Internal DNC class is uncertifiable because it lacks commonality. The class definition

includes individuals without valid claims—such as those who reconsented or were contacted within the 10-day safe-harbor period—making it impossible to prove the validity of all class members' claims "in one stroke." *Dukes*, 564 U.S. at 350. Because common evidence cannot identify which members have valid claims, the Internal DNC class must be stricken.

### 3.   Plaintiff's Internal DNC Class is Vague and Ambiguous as to the Phrase "third party acting on behalf of Defendant."

For the same reasons as Section III(C)(3) above, the Internal DNC class is uncertifiable because it is vague and ambiguous as to the phrase "third party acting on behalf of Defendant." Plaintiff provides no parameters identifying which third parties would qualify as a third party acting on Lending Force's behalf, leaving the scope of the class unclear. *See Parsittie*, 2019 WL 8163645, at *4.

### 4.   Plaintiff's Internal DNC Class is Defined Based Upon the Merits Instead of Objective Criteria.

For the same reasons as Sections III(B)(3) and III(C)(4) above, the Internal DNC class is uncertifiable because it is also pleaded on a merits based inquiry and not objective criteria. The class turns on whether a consumer received two or more telemarketing calls or text messages. (PageID. 8, ¶ 44). Because the Internal DNC class definition "employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability" the class can never be certified. *Alhassid,* 307 F.R.D. at 693.

**E.     The Court Should Not Wait Until The Certification Stage To Address These Issues But Should Strike Them Here And Now.**

Plaintiff will undoubtedly ask the Court to overlook the flaws in his proposed classes and allow him to leverage the cumbersome machinery of class discovery. There is no reason to allow the case to proceed to certification when it is apparent at the outset that the proposed class definitions cannot be certified. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 444 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.").

This approach is consistent the Federal Rules of Civil Procedure, which require courts to rule on class certification issues "[a]t an early practicable time" following the filing of a complaint. Fed. R. Civ. P. 23(c)(1)(A). Should Plaintiff's facially uncertifiable class be allowed to proceed, Lending Force will otherwise be forced to engage in extensive and burdensome discovery and litigation only for class certification to be inevitably denied, which wastes both the parties' judicial resources. *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) ("[T]he problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them."). These inefficiencies can be avoided by striking Plaintiff's class allegations that are plainly incapable of certification.

24

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant Lending Force LLC respectfully requests that the Court strike Plaintiff's class allegations from his Complaint.

Respectfully submitted,

TROUTMAN AMIN, LLP

By: */s/ Brittany A. Andres*
Eric J. Troutman
Brittany A. Andres
400 Spectrum Center Drive
Suite 1550
Irvine, CA 92618
troutman@troutmanamin.com
brittany@troutmanamin.com
Tel: (949) 350-5612
*Attorneys for Defendant Lending Force LLC*

WILLIAMS, WILLIAMS, RATTNER
& PLUNKETT, P.C.
Alexander A. Ayar (P69623)
Michael J. Petrus (P84605)
380 N. Old Woodward, Ste 300
Birmingham, MI 48009
(248) 642-0333
aayar@wwrplaw.com
mpetrus@wwrplaw.com
*Attorneys for Defendant Lending Force LLC*

Dated: January 16, 2026

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ASHER BRONSTIN**, individually and on
behalf of all others similarly situated,

       Plaintiff,              Case No. 25-cv-13564-LJM-DRG

v.

                             Hon. Laurie J. Michelson

**LENDING FORCE LLC**,        Magistrate Judge David R. Grand

       Defendant.

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of January, 2026, I caused a copy of the foregoing Defendant Lending Force LLC's Motion to Strike Class Allegations and this Certificate of Service to be filed electronically with the United States District Court, Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

                            */s/ Brittany A. Andres*
                            BRITTANY A. ANDRES

1